IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 28, 2015

**STATE OF TENNESSEE v. WILLIAM BRIAN BROWN**

**Appeal from the Criminal Court for Campbell County**
**No.    16202            E. Shayne Sexton, Judge**

-------------------------

**No. E2014-02361-CCA-R3-CD – Filed June 30, 2015**

-------------------------

The Defendant, William Brian Brown, pleaded guilty to one count of theft of property valued more than $10,000, and one count of vandalism valued over $1,000. In accordance with the plea agreement, the trial court placed the Defendant on judicial diversion for six years, to be served on supervised probation. The Defendant agreed to pay restitution to the victims at a minimum of $250 per month. Almost a year later, the State filed a motion to set aside and terminate the order of judicial diversion, which the trial court granted. The trial court revoked the Defendant's judicial diversion, held a sentencing hearing, and sentenced the Defendant to serve an effective sentence of five years of probation and to pay $100 per month in restitution. On appeal, the Defendant contends that the trial court did not follow proper procedure when it revoked his judicial diversion and that the trial court erred when it revoked his judicial diversion. After a thorough review of the record and applicable authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Martha Yoakum, District Public Defender; Tina L. Sloan (on appeal) and William Jones (at hearing), Assistant District Public Defenders, LaFollette, Tennessee, for the appellant, William Brian Brown.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; Jared R. Effler, District Attorney General; and Michael O. Ripley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# I. Facts

This case arises from the Defendant's stealing of metal items, which he sold for scrap. On May 8, 2013, the Defendant was indicted by criminal information for one count of theft of property valued over $10,000, and one count of vandalism valued over $1,000. The Defendant pleaded guilty to both offenses. A transcript of the guilty plea is not included in the record. The affidavit of complaint contained in the record on appeal indicates that:

> [The police officer] investigated the theft of the victim's property from Lamb Mountain Road in Newcomb, TN on or about 03-04-2013. The victim's property was valued at over $19,000. During the theft, an access gate was cut causing approximately $750.00 worth of damage.
>
> During the investigation, the [police officer] learned that the above Defendant took the victim's commercial metal gates, metal tank stairways, metal suction headers, metal balon ball valve, and 100 feet of 6 inch metal pipe on or about [03-04-2013] without permission. The above Defendant then took the property to scrap yards in Kentucky, including Pleasant View Recycling, and sold it for scrap metal value.
>
> During an interview with the Defendant, he stated that he knowingly trespassed on the victim's property, caused vandalism by cutting the access gate to the property with a concrete saw, and took (without the victim's permission) the victim's property. He further stated that he sold the items as scrap and used the money to purchase illegal narcotics.

The judgments indicate that the trial court agreed to defer the convictions by judicial diversion pending the Defendant's successful completion of six years of supervised probation. It also ordered the Defendant to repay the victims $9,625 and $600, respectively, at a minimum of $250 per month beginning June 1, 2013.

On March 10, 2014, the State moved the trial court to set aside and terminate its order of judicial diversion. On May 27, 2014, the trial court held a hearing on the motion. At that hearing, the State informed the trial court that the Defendant had not repaid his ordered restitution. The Defendant's attorney conceded that the Defendant was "significantly behind" on his repayment but stated that he had "routinely paid," just not in the amount that was ordered in the plea agreement. The Defendant's counsel stated that the Defendant does not have the ability to pay $250 per month but had paid $50 per month. The parties stipulated that the Defendant had only paid $50 per month and not the $250 he was ordered to pay.

2

The Defendant testified that he had achieved the 12th grade in his schooling but that he had been in a special education program at that school. He said that he had "problems functioning right" and that it took him "a while . . . to learn stuff." The Defendant said that he did read and write. He said that he did not have a job, was on food stamps, and was living with his cousin, who helped him.

The Defendant testified that he did not have a vehicle and did not drive. He said that he would ask for rides from acquaintances to get to his meetings with his probation officer. The Defendant recalled that it had been a year or longer since he last worked and that he had looked for employment unsuccessfully. The Defendant said that he applied for disability but was denied because he failed to submit his school records. He offered that he intended to reapply.

The Defendant said that he had met all of his appointments with his probation officer and had not been rearrested for any offenses while on probation. The Defendant said he was able to pay the $50 per month by obtaining work doing "odd jobs."

During cross-examination, the Defendant agreed that he signed the plea agreement and was aware at that time that he agreed to pay $250 per month. He said that he had been looking for employment since he signed the agreement but was unable to find a job. He had only found odd jobs such as weed eating and mowing yards. The Defendant said that the $50 he had been paying monthly had come from his seventy-year-old grandmother, who had been helping him financially.

After arguments by the parties, the trial court found:

This man, what has he done to use the opportunity that was given when he pled? All I'm hearing is all the reasons why it will never work. I mean, we've got programs in probation that will assist him. I don't know if he's taken advantage of it, there is no proof of that or lack of proof. But I am the strongest proponent of diversion in this room conditioned upon effort. I have heard nothing to suggest he's done anything to improve himself. So I mean, that's the question I pose to you – what has he done in the year, or what has the year shown? And let's just forget money. I mean, forget – although money is big in this case, I'm not hearing anything that suggests it's going to get better.

. . . .

It should be the proper standard in whether or not diversion should be given to begin with. I mean what -- rehabilitation, putting things behind you, yes, those -- that is the proper standard in determining

3

someone's eligibility for a diversion. I don't -- maybe this was someone that unfortunately was not going to be a good candidate for diversion to begin with.

. . . .

What I fear more than anything is the current direction of this case suggests it's go[ing to] go right back to where it was. I don't – I'm not seeing any movement that he will – that he will go anywhere but back to criminal activity and I hope it doesn't happen, but there has been nothing here.

Upon this basis, the trial court granted the State's petition to set aside the diversion and set the case for sentencing. After the sentencing hearing, the trial court sentenced the Defendant to three years for the theft conviction and two years for the vandalism conviction. The trial court ordered that the sentences run consecutively and to be served on probation.

## II. Analysis

On appeal, the Defendant contends that the trial court did not follow proper procedure when it revoked his judicial diversion and that the trial court erred when it revoked his judicial diversion.

"Judicial diversion is legislative largess whereby a defendant adjudicated guilty may, upon successful completion of a diversion program, receive an expungement from all 'official records' any recordation relating to 'arrest, indictment or information, trial, finding of guilty, and dismissal and discharge' pursuant to the diversion statute." *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999) (quoting T.C.A. § 40-35-313(b)). The State may seek to revoke a defendant's judicial diversion if the defendant violates the terms of his or her probation. *See Alder v. State*, 108 S.W.3d 263, 266 (Tenn. Crim. App. 2002). "[T]he trial court should follow the same procedures as those used for ordinary probation revocations" when addressing allegations that a defendant violated the terms of judicial diversion. *Id.* "If the trial court determines by a preponderance of the evidence that the defendant has violated probation," the trial court may terminate judicial diversion and proceed to sentence the defendant. *See State v. Johnson*, 15 S.W.3d 515, 519 (Tenn. Crim. App. 1999).

### A. Due Process

The Defendant first contends that the trial court did not follow proper procedure when it revoked his judicial diversion, citing *State v. Johnson*, 15 S.W.3d 515 (Tenn.

Crim. App. 1999). In *Johnson*, this Court stated that, if there is an alleged violation of probation, the matter shall proceed under the ordinary procedure for revocation of probation. *See* T.C.A. § 40-35-311(a). The Defendant contends that this procedure was not followed because a probation violation warrant was never issued and, instead, the State filed the motion asking that his judicial diversion be revoked based upon his non-compliance with the probation agreement. The State counters that the trial court was not required to strictly follow the procedures set forth in *Johnson*. The State further notes that this Court has criticized *Johnson*, stating that the procedures set forth are "clearly dicta" and that the procedures set forth in *Johnson* may, depending upon the context within which the procedures were read, conflict with the statute. *State v. Brys Andrew Hensley*, No. E2012-00812-CCA-R3-CD, 2013 WL 793579, at *3 (Tenn. Crim. App., at Knoxville, Mar. 4, 2013), *no Tenn. R. App. P. 11 application filed.*

In matters of probation revocation, defendants are not entitled to "'the full panoply of procedural safeguards associated with criminal trial'" but nonetheless "must be afforded due process in the revocation proceeding." *State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993) (quoting *Black v. Romano*, 471 U.S. 606, 613 (1985)). The United States Supreme Court set forth the minimum due process requirements for probation revocation proceedings in *Gagnon v. Scarpelli* and include (1) written notice of the allegations; (2) disclosure of adverse evidence; (3) an opportunity to be heard and present witnesses; (4) a conditional opportunity to cross-examine witnesses; (5) "an independent decision maker"; and (6) a written statement from the decision maker regarding evidence relied upon and reasons for revocation. 411 U.S. 778, 786 (1973) (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

In this case, the Defendant received written notice of the allegations against him in the form of the State's motion to revoke his judicial diversion. The trial court set a hearing on the motion. At the hearing, the State informed the Defendant and the trial court of the basis for its motion, namely non-payment of the agreed restitution, and the Defendant testified on his own behalf. The hearing was held before an independent judge, who then articulated the Defendant's failure to pay the court-ordered restitution, a fact to which the Defendant stipulated, as the basis for the revocation. We conclude that the Defendant was afforded due process in this proceeding. The trial court's revocation met the standards set forth in *Johnson* and the relevant statute. The Defendant is not entitled to relief on this issue.

The Defendant also takes issue with the fact that the trial court "determined that [the Defendant] had violated his agreement prior to any testimony" by finding that he had failed to pay the appropriate amount of restitution. The Defendant, however, stipulated to the fact that he had violated his agreement by paying only $50 per month when the agreement required him to pay $250.

**B. Revocation of Judicial Diversion**

The Defendant next contends that the trial court abused its discretion in revoking his judicial diversion because his failure to pay was not willful and based only on his inability to pay. The State counters that the trial court implicitly found that the Defendant's failure to pay was willful, especially in light of the fact that, in the year since the Defendant had been granted diversion, he had not found employment and stayed home most days.

We review a trial court's revocation of judicial diversion for abuse of discretion. *Johnson*, 15 S.W.3d at 517-18. An abuse of discretion will be found only if there is "no substantial evidence to support the conclusion of the trial judge." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citations omitted). "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." *Id.* (citing *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).

We conclude that the trial court did not abuse its discretion when it revoked the Defendant's judicial diversion. The parties stipulated that the Defendant had been paying only $50 per month of the $250 of the court-ordered restitution. The Defendant testified and explained that he was having a hard time finding a job and that he had failed to properly complete his application for disability. The trial court noted that the Defendant had not obtained employment in a year and that there was no evidence that he had sought employment using the programs through the probation department. We agree with the State that, implicit in the trial court's findings, was that the Defendant had willfully failed to pay his restitution. This is an adequate basis for the trial court's judgment.

## II. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's revocation of the Defendant's judicial diversion.

_____
ROBERT W. WEDEMEYER, JUDGE